# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSIE A. KNUTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-172-JHP-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Susie A. Knutson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for a full award of benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 31, 1950, was fifty-one years old at the time of her original application for benefits, and was sixty-six years old at the time of the most recent administrative hearing (Tr. 42, 1064). She completed eleventh grade and has worked as a glove sewer, leather cleaner, and glove parts inspector (Tr. 956). The claimant alleges that she has been unable to work since September 1, 1994, due to multiple sclerosis, vision problems, vertigo, difficulty walking and maintaining balance, stiffness, and problems with bowel and bladder control.

## Procedural History

On June 10, 2002, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, for a period of disability beginning September 1, 1994, with a date last insured of December 31, 1999. Her application was denied. ALJ Peter M. Keltch conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 20, 2004 (Tr. 13-17). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-04-517-RAW-SPS and remanded the case for further proceedings (Tr. 348-357). ALJ Richard J. Kallsnick conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated December 15, 2008 (Tr. 257-264). The Appeals Council again denied review, but this Court again reversed on appeal in Case No. CIV-09-182-RAW-SPS and remanded the case for further proceedings (Tr. 505-513).

ALJ Osly F. Deramus conducted a third administrative hearing and determined that the claimant was not disabled in a written opinion dated May 18, 2011 (Tr. 487-501). The Appeals Council denied review, but this Court again reversed on appeal in Case No. CIV-11-315-FHS-SPS, and remanded the case for further proceedings (Tr. 854-867). On remand, ALJ Doug Gabbard, II, held a fourth administrative hearing and again determined that the claimant was not disabled in a written opinion dated April 11, 2014 (Tr. 834-849). The Appeals Council again denied review, but this Court reversed in Case No. CIV-14-244-JHP-KEW, and remanded the case for further proceedings, stating, "This case has returned on appeal far too many times" (Tr. 968, 959-972). On remand, ALJ Luke Liter held a fifth administrative hearing and once again determined that the claimant was not disabled, in a written opinion dated March 8, 2017 (Tr. 947-958). The Appeals Council then denied review, and ALJ Liter's March 2017 written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, but that she had no limitations with sitting, standing, or walking, although she could only occasionally stoop, bend, crouch, crawl, balance, and kneel. He further found that she should have avoided all climbing of ladders, ropes, scaffolds, or chairs, and that driving should not be a part of her job duties. Finally, he determined that she could not tolerate exposure to hazards such as unprotected heights or dangerous moving machinery (Tr. 951). The ALJ concluded that although the claimant

could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, small parts assembler, inspector/packer, and poultry processor (Tr. 956-957).

## Review

The claimant contends, for the *fifth* time on appeal, that the ALJ erred by improperly evaluating the opinion of her treating physicians, Dr. Paul A. Pradel and Dr. Kamel Kutait. The undersigned Magistrate Judge finds, again, that the ALJ *did* fail to properly evaluate the opinion of Dr. Kutait, and the decision of the Commissioner should therefore be reversed for an immediate award of benefits.

The ALJ found the claimant had the severe impairment of benign positional vertigo (Tr. 949). Previous ALJ opinions had found the claimant had the severe impairments of, *inter alia*, status post left wrist fracture, labrynthitis, headaches, and mild osteopenia of the left shoulder (Tr. 861, 963). The medical evidence relevant to this fifth appeal reveals that the claimant received treatment at Holt Crock Clinic beginning in the late 1980s. There she was treated by Dr. Kutait in October 1990 for flu-like symptoms and on February 18, 1992 for back pain after a fall the day before (Tr. 126, 130). He treated her several more times for coughing and/or chest pain, and ordered an x-ray that came back normal (Tr. 123, 127, 135). Further treatment notes from Holt Crock Clinic reflect additional complaints over time related to shoulder pain and dizziness that occurred off and on for several years (Tr. 117, 121, 125, 128-129). In fact, a 1992 note indicates that she had been having dizzy spells for a year and included "(benign positional vertigo)" as a diagnosis (Tr. 125). Furthermore, a 1993 note reflects that a neurological consult needed to be scheduled in

light of continued fatigue, pain, and reports of being off balance off and on (Tr. 128). A June 3, 1994 CT scan of the brain was normal (Tr. 163).

Dr. Kutait completed an Attending Physician's Statement in October 2008 in response to a request from ALJ Kallsnick following the first remand of this case. In this Statement, Dr. Kutait indicated that he could not recall when he began treating the claimant but that it was in the mid-1990s (Tr. 431). He indicated that her diagnoses were dizziness rule out multiple sclerosis or stroke, hypertension, hypolipidemia, and middle ear disease rule out Meniere's (Tr. 431). He checked a box affirming that the claimant had vertigo, which was triggered by position changes and characterized by getting dizzy upon rising or turning fast, having an ataxic gait, and a positive Rhomberg Balance Test (Tr. 431). Additionally, he indicated that her vertigo included symptoms of headaches. He also checked boxes to indicate that the claimant's impairments affected her attention and concentration and ability to tolerate work stress, and that they would require unscheduled breaks, produce good and bad days, and likely result in absence from work more than four days a month (Tr. 431-432). Written in all-capital letters at the end of the assessment is a statement that Dr. Kutait's opinion pertained to the claimant's limitations as they existed on or before December 31, 1999 (Tr. 432).

Dr. Pradel first saw the claimant on May 12, 2001 at Sparks Hospital and treated her for complaints of chest pain (Tr. 153-156). On July 18, 2003 Dr. Pradel completed an Attending Physician's Statement and diagnosed the claimant with dizziness, rule out multiple sclerosis or stroke; hypertension; and hypolipidemia (Tr. 188). Like Dr. Kutait, he indicated that the claimant had vertigo, which was triggered by position changes and

accompanied by headaches (Tr. 188). Like Dr. Kutait, he also found that the claimant's impairments affected her attention and concentration and ability to tolerate work stress, and that they would require unscheduled breaks, produce good and bad days, and likely result in absence from work more than four days a month (Tr. 189). As to the claimant's ability to do work, Dr. Pradel completed a Medical Source Statement in which he indicated that the claimant could sit for thirty minutes at a time, up to four hours in an eight-hour workday; that she could stand fifteen minutes at a time, up to two hours of an eight-hour workday; that she could walk less than fifteen minutes at a time, for up to an hour in an eight-hour workday; that she could only occasionally lift/carry up to five pounds; that she could use her hands for grasping and fine manipulation, but not pushing and pulling; that she could not use her feet for repetitive movements; that she could not bend, squat, crawl, climb, reach above her head, stoop, crouch, or crawl; that she could not tolerate exposure to unprotected heights, moving machinery, marked temperature changes, or driving auto equipment, and only occasionally handle exposure to dust, fumes, gases, and noise (Tr. 190-192).

On October 2, 2002, a state agency physician completed a physical RFC assessment and concluded that she had no exertional, postural, manipulative, visual, or communicative limitations but that she should avoid all hazards, noting that she had diagnoses of benign positional vertigo and labrynthitis with episodic dizziness (Tr. 181-187).

At the most recent administrative hearing, the ALJ called Dr. Ronald Devere, a board certified neurologist, to testify as a medical expert (Tr. 1073). At the hearing, he described the records as "dismal," because they contained a number of symptoms but no

-7-

real diagnosis (Tr. 1075). He then testified that he could not provide a diagnosis because the record was "inadequate," and he believed she needed to be evaluated by an independent neurologist, but that he could provide a list of restrictions (Tr. 1078-1079). The ALJ then asked him to opine as to her restrictions, and he responded by indicating that she could not work near unprotected heights or moving machinery; could not climb ladders, scaffolds, or stools, or chairs, but she could still climb stairs; and could not drive (Tr. 1080). He then stated that he did not see any restrictions with regard to sitting, standing, or walking, because he did not know how frequently her spells were, then further stated that she could lift/carry twenty pounds occasionally and ten pounds frequently due to issues with dizziness and balance (Tr. 1081). When asked if the claimant had vertigo, he could not say because he did not examine her (Tr. 1081-1082).

At the hearing, the ALJ also noted this Court's admonition in the fourth appeal that if the ALJ had questions as to Dr. Kutait's treatment, he should have recontacted him rather than rejecting his opinion out of hand, and stated that Dr. Kutait had apparently died in 2010 and was therefore unavailable for such inquiry (Tr. 968, 1071).

In his written opinion, ALJ Liter summarized all of the claimant's hearing testimony, as well as much of the medical evidence. He extensively discussed Dr. Devere's testimony and opinions, assigning it "greater weight" than any of the other opinions in the record, while assigning no weight to the opinions of Dr. Kutait and Dr. Pradel. As to Dr. Devere, ALJ Liter particularly noted that Dr. Devere was unable to provide a diagnosis of the claimant, and to classify her condition as vertigo, because he did not examiner her (Tr. 953). He further noted that although she alleged disabling vertigo, there are no treatment

records pertaining to vertigo from September 1, 1994 through January 13, 1998, but that she did present with complaints of dizziness off and on for several years beginning January 13, 1998 (Tr. 954).  The ALJ then adopted the restrictions proposed by Dr. Devere, finding them consistent with her complaints through the date last insured (Tr. 954).  As to Dr. Kutait, the ALJ found that he saw the claimant infrequently, there was no clinical evidence to support his opinion, he was not a neurologist, and he did not treat the claimant for vertigo/dizziness prior to her date last insured (Tr. 955).  He further stated that the restrictive limits he imposed were not consistent with the number of times he saw the claimant (Tr. 955).  As to Dr. Pradel, the ALJ found that there was little clinical or laboratory evidence to support his opinion, but that his opinion was nevertheless inconsistent with his own treatment notes in 2002 (after the claimant's date last insured), and that he in fact began treating her five months after her date last insured and primarily for chest pain (Tr. 956).  The ALJ further stated that Dr. Pradel's opinion was not supported by the evidence from prior to her date last insured, noting Dr. Devere's testimony that the record largely consisted of symptoms without a diagnosis, and that she had no complete neurological work up done (Tr. 956).

      The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted].  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the

-9-

following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Kutait expressed such an opinion in his RFC Assessments; however, the ALJ rejected the physical RFC assessment because the treatment relationship was infrequent, there was no "clinical evidence" to support his opinion, and he was not a neurologist. However, the ALJ's evaluation of Dr. Kutait's frequency of treatment with the claimant is disingenuous in the fact that he had the benefit of *all* of her treatment records from Holt Crock Clinic, which did bear record to her years-long reports of and treatment for dizziness. Moreover, he treated her for a fall of unknown origin, which may or may not have been related to her dizziness. *See Hardman v. Barnhart*,

-10-

362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].  This is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused solely Dr. Kutait's records to the exclusion of records reflecting her ongoing problems with dizziness from 1992 through the date last insured.  20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

   Furthermore, although Dr. Pradel's opinion may have somewhat more limited utility in light of the fact that his treatment of the claimant occurred after her date last insured, it is relevant to the extent it reflects a continuation of and treatment for symptoms that existed prior to her date last insured and to the extent it is consistent with Dr. Kutait's opinion as to her functional limitations.

    "When a decision of the [Commissioner] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). The undersigned Magistrate Judge finds that a remand for award of benefits is appropriate in this case.  Even the Commissioner has previously acknowledged the Tenth Circuit's holding in a case where the disability application had been pending six years:  "[One] of

-11-

the relevant factors we consider [is] the length of time the matter has been pending." *Huffman v. Astrue*, 290 Fed. Appx. 87, 90 (10th Cir. 2008), *quoting Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) ("Some of the relevant factors we consider are the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits.") (internal citations omitted). In this case, the Plaintiff has been forced to appeal to this Court *five* times for essentially the same error – the inability to appropriately assess the opinions of two treating physicians, despite this Court's previous, repeated reversals for failure to do so, as well as this Court's previous admonishment that "[t]his case has returned on appeal far too many times." (Tr. 968). Here, the Social Security Administration has been given numerous opportunities to properly evaluate the same evidence. This has taken over sixteen years. Accordingly, *both* factors of time and evidence weigh in favor of the Plaintiff. Under these circumstances, the undersigned Magistrate Judge finds that additional fact finding would only serve the purpose of delay of the receipt of benefits, and that a sixteen-year delay involving five appeals to this Court was more than sufficient time to allow the Social Security Administration to properly adjudicate the Plaintiff's disability application. *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (On second appeal and after four administrative hearings, "[W]e would caution the agency that '[t]he Secretary is not entitled to adjudicate a case 'ad inifinitum until it [sic] correctly applies the proper legal standard and gathers evidence to support its [sic] conclusion.'"), *quoting Sisco v. U.S. Department of Health and Human Services*, 10 F.3d 739, 746 (10th Cir. 1993), *quoting Thaete v. Shalala*, 826 F. Supp. 1250, 1252 (D. Colo.

1993). *Compare with Tucker v. Barnhart*, 201 Fed. Appx. 617, 620, 625 (10th Cir. 2006) (reversing and remanding for further proceedings even though the case had already been pending for nine years, where a previous district court remand order did not mention the most recent arguments on appeal and the record did not reflect the claimant had requested the ALJ consider the relevant listings).

## Conclusion

Accordingly, the undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for a full award of benefits to the Plaintiff. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**